IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEVON LEWIS, individually and on behalf of all other similarly situated,

        Plaintiffs,

v.

CARRIER ONE, INC.

        Defendant.

## COMPLAINT

1. This is an action brought on behalf of current and former Illinois drivers challenging Defendant Carrier One, Inc.'s ("Carrier") unlawful practices of misclassifying transportation service drivers as independent contractors instead of as employees, unlawfully deducting amounts from employees' compensation, and failing to pay employees at least minimum wage during each workweek.

2. Plaintiff Devon Lewis ("Lewis") and the group of similarly situated plaintiffs (the "putative class") allege that as a result of Defendant's misclassification, illegal deductions were made from their wages in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. § 115/9, and Defendant failed to pay its employees at least federal minimum wage for all hours worked, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206.

3. Lewis also individually alleges the state law torts of retaliatory discharge and conversion against Carrier.

## THE PARTIES

4. Lewis is an adult resident of Spring Valley, Illinois. He has provided transportation services for Carrier as a driver in the State of Illinois from approximately June 2013 until approximately July 2015.

5. Plaintiff brings this action on behalf of a putative class of similarly-situated individuals, namely, all persons who purported to enter into a "Independent Contractor" agreement or similar contract ("Contract"), individually or on behalf of another entity, and personally provided services as drivers pursuant to that Contract for Carrier in the State of Illinois at any time during the relevant statutory period, and who were not classified as employees of Carrier.

6. Plaintiff and the members of the putative class are "employees" within the meaning of the IWPCA and FLSA.

7. Defendant Carrier is a Delaware corporation, headquartered in Alsip, Illinois. Carrier does business in Illinois, operates facilities in Illinois, and is registered with the Illinois Secretary of State.

8. Carrier is subject to the provisions of the IWPCA and the minimum wage provisions of the FLSA, and is an "employer" within the meaning of those statutes.

## JURISDICTION

9. This Court has jurisdiction of this action under the provisions of the FLSA pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10. The unlawful employment practices described herein were committed within the State of Illinois, at Carrier's facilities located in Cook County. Accordingly, venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b

11. The Court has personal jurisdiction over Plaintiff and the class he seeks to represent because they are citizens of the State of Illinois and/or work in the State of Illinois.

12. The Court has personal jurisdiction over Defendant Carrier because it does business in the State of Illinois, is registered with the Illinois Secretary of State, and its conduct in the State of Illinois underlies all claims in this suit.

## STATEMENT OF FACTS

13. Carrier provides transportation services to clients in Chicago, IL and the surrounding areas and states, in addition to servicing other parts of the nation.

14. Plaintiff and the putative class members were required by the Defendant to own or lease a truck and related equipment in order to perform services as drivers for Carrier. These trucks were registered under Carrier's name.

15. Although Carrier classifies Plaintiff and the members of the putative class as independent contractors, the behavioral and financial control manifested over the drivers by Carrier demonstrates that they are Carrier's employees. Plaintiff and the putative class are and/or were required adhere to Carrier's "rules of conduct" for drivers; to check in with Carrier and provide a report at 9:00 a.m. and 4:00 p.m.; to report to facilities maintained by Carrier in Illinois in order to have their vehicles inspected; to turn in paperwork weekly; were supervised by Carrier management and dispatchers (who had the ability to direct, discipline, and terminate them); were required to respond to Carrier dispatch (which gives them instructions); were

3

prevented from securing loads on their own; and were required to complete and file specific paperwork related to their driving services, generated by or pursuant to Carrier's specifications.

16. Despite any language contained in the Contract, Plaintiff and the members of the putative class were dependent on Carrier to provide them with schedules, routes, and loads, and were not permitted to make independent determinations regarding their own working hours, working days, or which runs (trips) to do. If Plaintiff or members of the putative class turned down a load or requested a different load, Carrier would impose negative repercussions upon the driver, such as refusing to provide future work.

17. Plaintiff and the putative class members work(ed) full-time for Carrier, and the Contract requires them to own or lease a truck that meets specifications determined by Carrier. The Contract also specifies that the truck shall be used for Carrier's exclusive possession, control, and use only. Plaintiff and the putative class members were required to display Carrier logos on their vehicles, and were provided with Carrier shirts and jackets to wear. Plaintiff and the putative class members were prevented from earning revenue by use of their trucks except on Carrier business.

18. Plaintiff and the putative class members perform(ed) work that is in the usual course of business of Carrier – i.e. they perform transportation services as drivers, and Carrier is engaged in the business of providing transportation services to its customers.

19. Plaintiff and the putative class members do not have an independently established trade or business in that they do not perform delivery services for anyone else. The drivers are dependent upon Carrier for their work, they do not negotiate with Carrier's customers regarding the rates charged for their services, and they do not contract with Carrier's customers independently. Carrier did not allow Plaintiff and putative class members to secure their own

4

loads, and Carrier intervened to communicate with its customers in the event of any issues with their customers' loads.

20. Carrier retains the right to terminate Plaintiff and the putative class members if Carrier determines that they are not performing their work up to Carrier's standards, or if Carrier determines that they engaged in improper conduct (including but not limited to dishonesty, immoral conduct, fighting, failure to report accidents, failure to adhere to Carrier's instructions or requirements, and participating in any activities that interfere with Carrier's operations), at the discretion of Carrier.

21. Carrier selects its drivers' insurance coverage, and deducts certain expenses directly from Plaintiff and the putative plaintiffs' checks without authorization at the time such deductions are made, including deductions as applicable for operating expenses including truck leases, insurance, and administrative costs.

22. Carrier compels Plaintiff and the putative plaintiffs to incur certain expenses that would normally be borne by an employer, such as for fuel costs and vehicle maintenance and repair costs. These costs would often be advanced by Carrier, and then subsequently "charged back" to the driver.

23. Carrier frequently deducted such large amounts from Plaintiff's and the putative class members' paychecks, that the deductions amounted to over 25% of the total wages owed to the employee in that pay period.

24. Carrier frequently deducted amounts from Plaintiff's and the putative class members' paychecks, so much so that in certain weeks, the Plaintiff and upon information and belief members of the plaintiff class were not paid at least federal minimum wage and or were not paid at all for the hours they worked in any given workweek.

25. Plaintiff and the members of the putative class regularly worked 6-11 per day, 5-6 days per week. Plaintiff averaged 70 hours per week working for the Defendant, and believes that members of the putative class drove approximately as many hours on a regular weekly basis.

## CLASS ALLEGATIONS

26. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 for and on behalf of the following class (the "Plaintiff Class"):

> All persons who entered into Independent Contractor agreements or similar contracts for services with Carrier One, Inc., individually or on behalf of another entity, and personally provided transportation services as drivers pursuant to that agreement and/or contract in the State of Illinois at any time during the relevant statutory period, and who were not classified as employees of Carrier.

27. The members of the class are so numerous that joinder of all members of the Class is impracticable. Plaintiff believes that the Plaintiff Class numbers between fifty and one hundred individuals over the statutory timeframe.

28. Common issues of law and fact predominate the claims of the entire Plaintiff Class. Specifically, all claims are predicated on a finding that Carrier misclassified its drivers as independent contractors when they were in fact employees. In short, the claims of the named Plaintiff are identical to the claims of the class members.

29. The named Plaintiff is an adequate representative of the class because all potential plaintiffs were subject to Carrier's uniform practices and policies. Further, the named Plaintiff and the potential class plaintiffs have suffered the same type of economic damages as a result of Carrier's practices and policies.

30. Plaintiff will fairly and adequately represent and protect the interests of the Plaintiff Class. Plaintiff's counsel is competent and experienced in litigating large wage and hour class and collective actions.

31.     Finally, a class action is the only realistic method available for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation makes it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein.  Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would be unjust and inequitable.

**COUNT I – Illinois Wage Payment and Collection Act**
**(Class Action against Carrier)**

32.     Plaintiffs incorporate and re-allege paragraphs 1 through 31 as though fully set forth herein.

33.     Carrier violated the IWPCA, 820 Ill. Comp. Stat. 115/1 *et seq.*, by failing to properly compensate Plaintiff and the members of the putative class for all hours worked.

34.     Carrier violated the IWPCA, 820 Ill. Comp. Stat. 115/9, by making unlawful deductions from Plaintiff's and the putative class members' pay.

35.     Carrier violated the IWPCA, 820 Ill. Comp. Stat. § 115/9, by routinely deducting greater than 25% of the net amount of Plaintiff's and the putative class members' payments.

36.     Plaintiff, on behalf of himself and the putative class members, seeks all unpaid wages as well as reimbursement for all unlawful deductions taken by Carrier from his and the putative class members' pay.

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

a)      Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

b)      Restitution for all deductions taken from Plaintiff's and the Class' pay;

c)      Restitution for all of Defendant's operating expenses that Plaintiff and the Class were forced to bear;

    d)    Statutory damages pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

    e)    Prejudgment interest;

    f)    Attorney's fees and costs; and

    g)    Any other relief to which the Plaintiffs and the Class members may be entitled.

## COUNT II – Fair Labor Standards Act
### (Class Action against Carrier)

37. Plaintiff incorporates and re-alleges paragraphs 1 through 31 as if fully set forth herein.

38. At any and all times relevant hereto, Carrier was, and still is, an "enterprise engaged in commerce" as defined by Section 3(s) of the Fair Labor Standards Act, 29 U.S.C. § 203(s).

39. Carrier was at all relevant times, and still is, an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

40. At any and all times relevant hereto, Plaintiff and members of the putative class were "employees" as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

41. Plaintiff and the members of the putative class are entitled by statute to compensation at a regular rate not less than the federal minimum wage for each hour worked during the three (3) years preceding the filing of this action.

42. Carrier, through its practice of deducting amounts from the paychecks of the Plaintiff and the members of the putative class, failed to compensate its employees at a rate equal to at least the federal minimum wage for each hour worked in certain weeks.

43. Carrier knew its obligations under the FLSA, but deliberately chose not to heed them. Thus, Defendant's failure to pay its employees at least the federal minimum wage for all hours worked is an intentional violation of the FLSA.

44. Defendant's acts, as described in this Count, were not based upon good faith or reasonable grounds.

45. As a direct and proximate result of Defendant's actions, back wages and liquidated damages are due to Plaintiff and the members of the putative class.

WHEREFORE, Plaintiff respectfully requests that the Court enter the following relief:

a) Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

b) Back pay equal to the amount of all unpaid minimum wages for the three (3) years preceding the filing of this Complaint;

c) Liquidated damages equal to the amount of unpaid back wages;

d) Prejudgment interest with respect to the total amount of unpaid minimum wage compensation;

e) Attorney's fees and costs incurred as a result of the Defendant's violation of the Fair Labor Standards Act; and

f) Any other relief to which the Plaintiff and the putative class members may be entitled.

**COUNT III – Retaliatory Discharge in violation of the Illinois Workers' Compensation Act (Individual Claim against Carrier)**

46. Plaintiff incorporates and re-alleges paragraphs 1 through 25 as though fully restated herein.

47. On or around June 28, 2015, Plaintiff suffered a back injury while working. He completed his run (a drive from Illinois to Nebraska and back) and then sought medical treatment at the Emergency Room for his injury.

48. Plaintiff's doctor in the ER advised Plaintiff to speak to Carrier regarding his coverage under the Illinois Workers' Compensation Act, and to inquire with Carrier as to what he needed to do, and whether he needed to submit to drug and alcohol tests in order to obtain benefits.

49. Pursuant to his doctor's instructions, Plaintiff called Carrier and left a message informing the Company that he had injured himself, and wanted to inquire regarding their requirements for submitting a claim for workers' compensation benefits.

50. The next day, having not heard back from Carrier, Plaintiff submitted to drug and alcohol tests for the purpose of applying for workers' compensation benefits.

51. Carrier did not return Plaintiff's call regarding his application for workers' compensation benefits.

52. Carrier did not address Plaintiff's notice of having been injured on the job.

53. On or around July 25, 2015, Plaintiff's wife contacted Carrier and was informed that Plaintiff had been terminated.

54. Plaintiff never received any formal notice of termination.

55. Defendant discharged Lewis in retaliation for inquiring about and claiming workers' compensation benefits, in contravention of a clearly mandated public policy.

56. Defendant discharged Lewis for suffering an injury at work compensable under the Illinois Workers' Compensation Act, in contravention of a clearly mandated public policy.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order as follows:

a) Awarding Plaintiff compensatory damages, including but not limited to back pay and lost benefits;

b) Awarding Plaintiff equitable relief and damages, including but not limited to front pay; and

    c)    Awarding Plaintiff punitive damages, as well as any other damages as the Court may deem just and proper.

### COUNT IV – Conversion
### (Individual Claim against Carrier)

57.    Plaintiff incorporates and re-alleges paragraphs 1 through 25 and 47 through 54 as though fully restated herein.

58.    As a result of Plaintiff's workplace injury, as described herein, Plaintiff was unable to perform work for Carrier following June 28, 2015.

59.    On or around July 24, 2015, Plaintiff received a letter from Impel Union, Inc., indicating that he had defaulted on his obligation to make payments on amounts that he otherwise paid to Carrier: recurring lease payments related to the lease of his truck, and a personal loan that was provided to him by Carrier in 2014. The letter indicated that he had ten (10) days to make a payment on the amounts owed.

60.    The same day that Plaintiff received the letter described above, his truck was repossessed.

61.    Carrier engaged in self help and initiated repossession of Plaintiff's truck without providing Plaintiff with reasonable notice or opportunity to cure.

62.    At no time did Carrier attempt to obtain any payments purported owed by Lewis to it, through a collection agency.

63.    As of the date of filing this Complaint, Carrier has not provided Lewis with information about the whereabouts or status of his truck, has not allowed Lewis to access his truck, and has not returned the truck to Lewis' possession.

64.    Lewis has clear ownership and the right to possession of his truck.

65. By depriving Lewis of his truck in the manner described above, Carrier wrongfully and willfully misappropriated Lewis' property to its benefit and to Lewis' detriment, in violation of Lewis' property rights.

66. As a proximate result of Carrier's act of conversion, Lewis has been deprived of his property rights and has been unable to obtain work as a driver using his Peterbilt 2014 truck. He has suffered significant damages, in an amount to be proved at trial.

67. The aforementioned acts of Carrier were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter the following relief:

a) Awarding Plaintiff possession or the monetary value of his truck;

b) Awarding Plaintiff back pay damages for amounts he could have earned had Carrier not deprived him of his property;

c) Awarding exemplary and/or punitive damages against the Defendant;

d) Awarding Plaintiff his reasonable attorneys' fees and costs; and

e) Such other and further relief as this Court deems just under the circumstances.

Dated: August 24, 2015                    Respectfully submitted,

Alejandro Caffarelli, #06239078           DEVON LEWIS, individually and on behalf of
Lorrie T. Peeters, #06290434              all others similarly situated,
Caffarelli & Associates Ltd.
224 N. Michigan Ave., Ste. 300            By: /s/ Alejandro Caffarelli
Chicago, IL  60604                            Attorney for the Plaintiff
Tel. (312) 763-6880